IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BERKLEY REGIONAL<br>INSURANCE COMPANY | * | |
| | * | |
| *Plaintiff,* | * | Case No. 15-cv-563 (DKC) |
| v. | * | |
| EDWARD J. MURRAY, et al. | * | |
| *Defendants.* | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **AFFIDAVIT OF NANCY MANNO**

I, Nancy Manno, being at least 18 years of age and competent to testify, hereby state:

1.   I am an Assistant Vice President for Surety Claims for Berkley Regional Insurance Company ("Berkley").

2.   I have reviewed the Motion for Summary Judgment, Memorandum in Support, and Exhibits thereto filed by Berkley in this action. This Affidavit is submitted in support thereof.

3.   I am the officer of Berkley responsible for administering the payment bonds that are the subject of this action, as well as Berkley's relationship with its bond principals, PowerMax, Inc. ("PowerMax") and ServiceMax, Inc. ("ServiceMax"). I am likewise responsible for administering Berkley's relationship with those PowerMax and ServiceMax indemnitors who are Defendants in this action: Edward J. Murray, Jean A. Murray, Timothy E. Murray, Pamela Murray, Matthew W. Murray, and Donna R. Murray (collectively, the "Murrays").

4.   Exhibits A and B to the Motion are true and accurate copies of the General Agreements of Indemnity that the Murrays, among others, executed in favor of Berkley.

1

5. Exhibits C through M to the Motion are true and accurate copies of the payment bonds issued by Berkley on behalf of PowerMax and ServiceMax that they purport to be.

6. Exhibit N to the Motion is a true and accurate accounting of Berkley's payments and recoveries through November 30, 2015 in connection with the bonds issued on behalf of PowerMax and ServiceMax that are the subject of the Motion.

7. Exhibit O to the Motion is compendium of true and accurate copies of checks Berkley has issued to third-parties who have asserted claims against the bonds, as is described in the Motion and Memorandum. Exhibit N itemizes these payments.

8. All of these payments by Berkley were made after Berkley conducted a good faith investigation into the asserted claims which included, among other things, a review of documentation submitted by the claimants and consultation with PowerMax and/or ServiceMax about the claims. Berkley's net out-of-pocket payments total $1,856,885.14 as of November 30, 2015. (Included in this amount are two invoices from Pike & Gilliss, LLC that were being processed for payment as of that date.)

9. Exhibits P and Q are true and accurate copies of invoices submitted to Berkley by its consultants and attorneys in connection with the matters addressed therein. I reviewed these invoices and approved payment thereof. Berkley engaged these attorneys and consultants to assist it with Berkley's evaluation of the operations of PowerMax and ServiceMax, the PowerMax Bankruptcy, the various payment bond claims that had been and continued to be submitted against bonds issued on behalf of PowerMax and ServiceMax, the enforcement of rights and remedies available to Berkley against its indemnitors, and related matters.

10. As part of my duties and responsibilities at Berkley, I frequently review and approve invoices from consultants and attorneys engaged by Berkley to assist with surety bonds

issued by Berkley and related matters. The expenses incurred by Berkley that are the subject of this Motion and reflected by Exhibit P and Q were fairly and reasonably incurred.

11. Exhibit S to the Motion is a true and accurate copy of a letter I delivered to, among others, the Murrays on September 29, 2014 on behalf of Berkley. Despite the demands set forth in that letter, the Murrays have failed and refused to comply therewith.

12. Exhibit T to the Motion is a true and accurate copy of a letter I authorized Berkley's counsel to deliver to, among others, the Murrays on February 12, 2015. Despite the demands set forth in that letter, the Murrays have failed and refused to comply therewith.

13. The Murrays did not provide any of the proceeds from the sale to Berkley of the property referenced in Exhibit U to the Motion.

14. Berkley's ultimate loss as a result of having issued bonds on behalf of PowerMax and ServiceMax remains unascertainable. Certain bond claims remain open and others, though denied by Berkley, may still be filed. The amount of any recovery by Berkley via the PowerMax Bankruptcy remains uncertain. The primary, if not sole, known assets of PowerMax are claims against general contractors on projects (bonded and non-bonded) for which PowerMax provided labor and materials. Any recovery by Berkley, through the PowerMax bankruptcy or otherwise, remains uncertain.

I declare under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

12-18-15
Date

Nancy Manno
Assistant Vice President, Surety Claims
Berkley Regional Insurance Company