```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
```

|  |  |
|---|---|
| BERKLEY REGIONAL INSURANCE COMPANY | : |
|  | : |
| v. | : Civil Action No. DKC 15-0563 |
|  | : |
| EDWARD J. MURRAY, et al. | : |
|  | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this surety indemnification case is a motion for summary judgment filed by Plaintiff Berkley Regional Insurance Company ("Plaintiff" or "Surety"). (ECF No. 38). Other pending motions include: a partial motion for summary judgment filed by Plaintiff (ECF No. 6); a motion for extension of time filed by Defendant Timothy E. Murray (ECF No. 23); and a motion for sanctions filed by Plaintiff (ECF No. 35). The court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion for summary judgment will be granted. The other pending motions will be denied as moot.

**I.   Background**

  **A.   Factual Background**

Plaintiff is an insurance company that issued multiple surety bonds on behalf of PowerMax and ServiceMax, two contracting companies that sometimes worked together on the same

projects.[1] (ECF Nos. 38 ¶ 1; 38-4, at 1). Plaintiff issued the surety bonds on behalf of the two companies in connection with various construction projects they were hired to undertake. (ECF Nos. 38-7 through 38-17). To obtain Plaintiff's services as a surety for PowerMax and ServiceMax, Defendants Edward J. Murray, Jean A. Murray, Timothy E. Murray, Matthew W. Murray, and Donna R. Murray (collectively, "Defendants"), as well as non-Defendants Kurt and Margaret Boyd, signed indemnification agreements in 2008 and 2014 (the "Agreements").[2] (ECF Nos. 38-5; 38-6). The Agreements provide that Defendants will indemnify Plaintiff for claims made against surety bonds that Plaintiff issues on behalf of both PowerMax and ServiceMax. Specifically, the Agreements provide that:

> [t]he Undersigned, jointly and severally, shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss,

---

[1] Sureties serve an important function in the construction industry. "The many parties to a typical construction contract – owners, general contractors, subcontractors, and sub-subcontractors – look to sureties to provide assurance that defaults by any of the myriad other parties involved will not result in a loss to them." *Gen. Acc. Ins. Co. of Am. v. Merritt-Meridian Const. Corp.*, 975 F.Supp. 511, 516 (S.D.N.Y. 1997).

[2] On December 10, the court administratively closed the case as to Defendant Pamela Murray after being notified that she had initiated bankruptcy proceedings. (ECF No. 37). There are two additional signatories to the Agreements, but they are not defendants in this case.

2

> payment, obligation, or penalty of any kind whatsoever, including without limitation, interest costs, court costs, costs to compromise or settle any claim, expert fees, investigative costs and the fees and expenses of attorneys, accountants and other professionals or service providers of any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse Surety for any payment by it, related to or by reason of: (i) this Agreement, a Contract or Bonds and/or Surety's procuring or enforcement of same or the prosecution, investigation, or defense of any Claim against or by Surety; . . . or (iv) the occurrence of an Event of Default and any prosecution, investigation, defense or settlement of the same by Surety.

(ECF Nos. 38-5 ¶ 1.01; 38-6 ¶ 1.01). The Agreements further provide that:

> Indemnitors shall pay over to the Surety, its successors and assigns, all sums of money which the Surety shall pay or cause or be paid or may be potentially liable to pay related to or by reason of an Indemnified Claim; such payment to be made to the Surety as soon as Surety notifies Indemnitor to deposit such funds with Surety, whether or not the Surety established or increased any reserve or shall have paid out such sum or any part thereof or not; and Surety is hereby authorized to use such funds, or any part thereof, in payment or settlement of any such demand, claim, liability, loss, charges, costs and expenses or other obligations Indemnitors may be liable to Surety under the terms of this Agreement. . . . Surety may apply any unused funds as collateral security to any other Bond or obligation of the Indemnitor under this Agreement.

(ECF Nos. 38-5 ¶ 1.02; 38-6 ¶ 1.02). The Agreements also assign collateral security to Plaintiff from Defendants, and if the collateral "is not sufficient to protect Surety's interests or if Surety deems itself insecure, Surety may call for additional collateral . . . satisfactory to Surety, and the Undersigned shall furnish [a]dditional [c]ollateral immediately upon demand by Surety." (ECF Nos. 38-5 ¶¶ 3.01, 3.02; 38-6 ¶¶ 3.01, 3.02).

In March 2014, after Plaintiff issued the surety bonds, PowerMax filed for bankruptcy. (ECF No. 38-4, at 10). In light of the bankruptcy, PowerMax and ServiceMax defaulted on many of their obligations, resulting in multiple claims to be brought against the bonds Plaintiff issued on their behalf. To date, Plaintiff has paid bond claims totaling $1,978,967.32, while recovering $412,481.74, for a net loss of $1,566,485.58. In addition, Plaintiff has incurred attorney and consultant fees of $290,399.56. Plaintiff asserts that Defendants are liable, as of November 30, 2015, for its net damages of $1,856,885.14. (*Id.* at 12-13). As directed by the Agreements, Plaintiff sent two demand letters to Defendants requesting that they provide collateral to cover the claims. (ECF Nos. 38-23; 38-24). Defendants did not respond to Plaintiff's letters and have not provided collateral or indemnification. In addition, Plaintiff contends that Defendants have "taken steps to deplete" potential

collateral, including selling property owned by Defendants. (ECF No. 38-4, at 14-15).

    **B.   Procedural History**

Plaintiff filed a complaint to commence this action on February 27, 2015. (ECF No. 1). The complaint seeks contractual indemnity (Count I), *quia timet* declaratory judgment (Count II), and specific performance (Count III). On March 12, 2015, Plaintiff filed a partial motion for summary judgment. (ECF No. 6). Defendants then answered the complaint (ECF Nos. 14; 22; 25) and filed a response in opposition to the partial motion for summary judgment (ECF Nos. 16; 26), to which Plaintiff replied (ECF Nos. 17; 30). On April 28, Defendant Timothy E. Murray filed a motion for extension of time. (ECF No. 23). On November 17, one day before discovery closed, Plaintiff filed a motion for sanctions against Defendants for their failure to provide responses to discovery requests. (ECF No. 35). On December 18, Plaintiff filed the pending motion for summary judgment. (ECF No. 38). The time to respond in opposition has passed, and Defendants have not responded.

**II. Standard of Review**

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. Even where, as here,

the nonmoving party fails to respond, the requested relief is not automatically granted. *See* Fed.R.Civ.P. 56(e). Rather, the court must "review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

## III. Analysis

Plaintiff seeks summary judgment as to its contractual indemnity claim (Count I) and its specific performance request (Count III).[3] Plaintiff argues that, under the unambiguous language of the Agreements, Defendants are liable for payments Plaintiff has made to bond claimants and for fees and expenses incurred. Plaintiff also contends that specific performance is warranted in light of the uncertain "prospect of hundreds-of-thousands of dollars in additional claims." (ECF No. 38-4, at 21).

### A. Indemnification Liability (Count I)

"Indemnity agreements such as those at issue in this case are valid and enforceable under New York Law."[4] *Merritt-*

---

[3] According to Plaintiff, Count II will be rendered moot if the court grants summary judgment on Counts I and III.

[4] The Agreements contain a choice of law provision stating that the Agreements "shall be governed, construed and enforced in accordance with the laws of the State of New York." (ECF Nos. 38-5; 38-6). Defendants do not contest the validity of this provision, and the court sees no reason to question it.

6

*Meridian*, 975 F.Supp. at 515-16; *see also First Nat'l Ins. Co. of Am. v. Joseph R. Wunderlich, Inc.*, 358 F.Supp.2d 44, 51 (N.D.N.Y. 2004). "New York courts have upheld such contractual provisions, and 'payments made by sureties under such provisions are scrutinized only for good faith and reasonableness as to amount paid.'" *Lumbermens Mut. Cas. Ins. Co. v. Darel Group U.S.A. Inc.*, 253 F.Supp.2d 578, 585 (S.D.N.Y. 2003) (quoting *Acstar Ins. Co. v. Teton Enters., Inc.*, 670 N.Y.S.2d 588, 589 (N.Y.App.Div. 1998)). "As long as the indemnity agreement is unambiguous, a court must give effect to the express terms contained therein and such interpretation is a matter of law which may be determined on a motion for summary judgment." *First Nat'l Ins. Co.*, 358 F.Supp.2d at 52.

Here, the Agreements unambiguously require that Defendants indemnify Plaintiff for the claims paid against the surety bonds and for costs and fees associated with such payments. (ECF Nos. 38-5 ¶ 1.01; 38-6 ¶ 1.01). In their response to Plaintiff's earlier partial motion for summary judgment, Defendants argue that the Agreements "were not agreements to indemnify [Plaintiff] for claims on bonds issued to ServiceMax." (ECF No.

---

*See Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 336 Md. 606, 610 (1994) ("[I]t is generally accepted that the parties to a contract may agree as to the law which will govern their transaction.").

7

16, at 4).[5]  This argument is unpersuasive in light of the unambiguous language of the Agreements. The terms of the Agreements apply to all the "undersigned" parties, which include Defendants, PowerMax, and ServiceMax. (ECF Nos. 38-5; 38-6). The 2008 Agreement provides that ServiceMax, ServiceMax's President Kurt Boyd, and Margaret Boyd "shall have no liability . . . for bonds on behalf of PowerMax," but there is no such provision limiting the liability or duties of PowerMax and Defendants. (*See* ECF No. 38-5 ¶ 21). The Agreements clearly show that Defendants agreed to indemnify Plaintiff for bonds issued on behalf of both PowerMax and ServiceMax. Furthermore, the Agreements give Plaintiff "the exclusive right in its name and/or the name of any Indemnitor to decide and determine whether any [i]ndemnified [c]laim, or any claim . . . shall or shall not be paid, compromised, settled, resisted, defended, prosecuted, tried or appealed, and the Surety's decision thereon, absent fraud, shall be final, conclusive and binding upon the Indemnitors." (ECF Nos. 38-5 ¶ 2.01; 38-6 ¶ 2.01). Such discretion is a cornerstone of surety-contractor relationships, and sureties "enjoy such discretion to settle claims because of the important function they serve in the construction industry, and because the economic incentives

---

[5] Pamela Murray also responded to the partial motion for summary judgment (ECF No. 26), but she has been removed as a defendant (ECF No. 37).

motivating them are a sufficient safeguard against payment of invalid claims." *Merritt-Meridian*, 975 F.Supp. at 516; *see also First Nat'l Ins. Co.*, 358 F.Supp.2d at 52; *Lumbermens*, 253 F.Supp.2d at 585. Thus, absent fraud or bad faith, Defendants are liable to Plaintiff under the unambiguous terms of the Agreements.

Defendants have not responded to the pending motion, have not alleged bad faith or fraud, and do not dispute any material facts surrounding Plaintiff's payment of the claims. Moreover, Plaintiff has submitted a declaration of Nancy Manno, its Assistant Vice President for Surety Claims, attesting that the payments "were made after [Plaintiff] conducted a good faith investigation into the asserted claims which included, among other things, a review of documentation submitted by the claimants and consultation with PowerMax and/or ServiceMax about the claims." (ECF No. 38-1 ¶ 8). The fact that Plaintiff has recovered a significant sum also evidences a lack of bad faith. Accordingly, because there is no indication of bad faith or fraud, Plaintiff has "demonstrated entitlement to judgment as a matter of law by submitting several bond contracts [(ECF Nos. 38-7 through 38-17)] and the indemnification agreements" (ECF Nos. 38-5; 38-6), as well as proof of payment (ECF Nos. 38-18; 38-19), and "correspondence which demonstrated that [Defendants] failed to so indemnify [Plaintiff]" (ECF Nos. 38-23; 38-24).

*Utica Mut. Ins. Co. v. Magwood Enters., Inc.*, 790 N.Y.S.2d 179, 180 (N.Y.App.Div. 2005); *see also Utica Mut. Ins. Co. v. Cardet Const. Co., Inc.*, 981 N.Y.S.2d 118, 121 (N.Y.App.Div. 2014) (holding that the lower court erred in not granting summary judgment for the plaintiff after the plaintiff put forth similar evidence as exists here).

Plaintiff is also entitled to recover the requested costs and attorneys' fees under the Agreements. The Agreements unambiguously require Defendants to indemnify Plaintiff for fees and costs, including "court costs, costs to compromise or settle any claim, expert fees, investigative costs and the fees and expenses of attorneys, accountants and other professionals or service providers of any nature whatsoever." (ECF Nos. 38-5 ¶ 1.01; 38-6 ¶ 1.01). Plaintiff provides multiple declarations attesting to the reasonableness of the fees and costs expended. (ECF Nos. 38-1; 38-2). Plaintiff provides extensive documentation regarding the fees and costs, and they appear to be reasonable. (ECF Nos. 38-20; 38-21). Accordingly, Defendants are liable for the fees and costs Plaintiff expended in connection with the claims made against the surety bonds. *See First Nat'l Ins. Co.*, 358 F.Supp.2d at 57 (awarding "attorney fees, costs, and other consulting costs under the Agreement"); *Am. Motorists Ins. Co. v. Pa. Beads Corp.*, 983 F.Supp. 437, 442 (S.D.N.Y. 1997) (awarding fees because they

10

"appear to have been incurred at arm's length and appear reasonable").

### B. Specific Performance (Count III)

Plaintiff also requests a "judgment for specific performance determining that . . . [Defendants] are and were required to post collateral security to [Plaintiff] as demanded and/or are and were prohibited from encumbering their assets as a result of [Plaintiff's] collateral demand and without [Plaintiff's] approval." (ECF No. 38, at 5). "Under New York law, a plaintiff is entitled to specific performance of contractual obligations if (1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." *U.S. Fidelity and Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F.Supp.2d 915, 921 (E.D.N.Y. 1999) (citation omitted).

Here, Plaintiff has shown that a judgment granting specific performance is warranted. First, there is no dispute that the Agreements are valid contracts requiring Defendants to continue to indemnify Plaintiff and post the requested collateral. In addition to the indemnification provisions discussed in detail above, the unambiguous language of the Agreements assigns collateral security to Plaintiff and provides that if the

11

collateral "is not sufficient to protect Surety's interests or if Surety deems itself insecure, Surety may call for additional collateral . . . satisfactory to surety, and the Undersigned shall furnish [a]dditional [c]ollateral immediately upon demand by Surety."  (ECF Nos. 38-5 ¶¶ 3.01, 3.02; 38-6 ¶¶ 3.01, 3.02). "Courts in New York have routinely upheld the validity of collateral security clauses and enforced their terms." *U.S. Fidelity*, 62 F.Supp.2d at 922 (citations omitted).  In addition, it is undisputed that Plaintiff has substantially performed on its obligations by paying the claims made against the bonds. Plaintiff also avers that Defendants own property, allowing them to perform their obligation of posting collateral.  Finally, Plaintiff has demonstrated a lack of an adequate legal remedy due to the uncertainty of future claims.  Legal remedies are not sufficient because Plaintiff's "obligations under the bonds are continuing, [and] the total loss to [Plaintiff] is not yet ascertainable." *Id*. at 923.  Accordingly, summary judgment will be granted in favor of Plaintiff on Count III.

**IV. Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Plaintiff will be granted.  The other pending motions will be denied as moot.  A separate order will follow.

_____/s/_____<br>
DEBORAH K. CHASANOW<br>
United States District Judge